**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **THREE BROTHERS SUPERMARKET INC., et al.**,<br><br>Plaintiffs,<br><br>*v.*<br><br>**UNITED STATES OF AMERICA,**<br><br>Defendant. | **CIVIL ACTION**<br><br>**NO. 2:19-cv-02003-KSM** |

**MEMORANDUM**

**Marston, J.** **September 1, 2020**

The Plaintiffs in this case are Three Brothers Supermarket Inc., a small grocery store in Philadelphia, and Jenny M. Espinal Tejada, the store's owner. (Doc. No. 1 at p. 1, ¶ 1.) They filed a complaint against the United States of America after the United States Department of Agriculture (USDA) permanently disqualified Three Brothers from participating in the Federal Supplemental Nutrition Assistance Program (SNAP). (*Id.* at p. 4, ¶ 17.) The Government found that Three Brothers engaged in unusual and irregular SNAP activity from October 2017 through March 2018 and concluded that this behavior was evidence of "trafficking"[1] in violation of 7 C.F.R. § 278.6(e)(1). (*Id.* at p. 4, ¶ 16.) Three Brothers denies that it engaged in trafficking of SNAP benefits and seeks *de novo* review of the agency's decision.[2] (*Id.* at pp. 6–7.) *See* 7 U.S.C. § 2023(a)(13) ("If the store . . . feels aggrieved by [the USDA's] final determination, it may obtain judicial review thereof . . . ."), (15) ("The suit in the United States district court or State court shall

[1] USDA regulations define "trafficking" as, among other things, the "buying, selling, stealing or otherwise effecting an exchange of SNAP benefits . . . for cash or consideration other than eligible food, either directly, indirectly, in complicity or collusion with others, or acting alone." 7 C.F.R. § 271.2.

[2] The complaint also included one count for selective enforcement, but this count was withdrawn by stipulation and dismissed with prejudice. (*See* Doc. No. 9.)

be a trial de novo by the court in which the court shall determine the validity of the questioned administrative action in issue . . . .”).

The Plaintiff has served interrogatories on the Government. The Government provided some information but objected to many of the interrogatories as seeking information protected by the deliberative process privilege. On August 17, 2020 the Plaintiffs filed a Motion to Compel Responses to Plaintiffs’ Interrogatories and Strike Defendants’ General Objections. (Doc. No. 21.) The Defendant United States of America filed its opposition (Doc. No. 22) on August 21, 2020. Having reviewed the parties’ arguments, the Court will grant the motion in part and deny it in part.

I.

“A party moving to compel bears the initial burden of showing the relevance of the requested information.” *Morrison v. Phila. Housing Auth.*, 203 F.R.D. 195, 196 (E.D. Pa. 2001). “The burden then shifts to the party resisting discovery to justify withholding it.” *Id.* The court may limit discovery if: (1) “the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive;” (2) “the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought;” or (3) “the burden or expense of the proposed discovery outweighs its likely benefit.” *Am. Civ. Liberties Union v. Gonzales*, No. 98-5591, 2005 WL 817878698, at *1 (E.D. Pa. Dec. 29, 2005).

We address the Government’s argument that many of the interrogatories seek information protected by the deliberative process privilege before addressing its objections as to individual interrogatories.

A.

The deliberative process privilege protects "predecisional communications" and documents that disclose the Government's deliberative process. *Cozen O'Connor v. U.S. Dep't of Treas.*, 570 F. Supp. 2d 749, 780–81 (E.D. Pa. 2008). It "focus[es] on documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975); *see also Cozen O'Connor*, 570 F. Supp. 2d at 870–71 (finding the agency properly withheld "draft versions of evidentiary memoranda, personal notes, and inter-agency documents containing pre-decisional analyses and discussion provided to [the agency] in its decision-making"). The government bears the initial burden of showing "entitlement to the privilege." *Redland Soccer Club, Inc. v. Dep't of Army*, 55 F.3d 827, 853 (3d Cir. 1995). Once the government satisfies its burden, "the party seeking discovery bears the burden of showing that its need for the documents outweighs the government's interest." *Id.* (explaining that the privilege is "not absolute"). "Thus a party's assertion of the deliberative process privilege requires a two-step review in the district court." *Id.* First, we must determine "whether the communications are in fact privileged." *Id.* Second, we must "balance the parties' interests" to determine whether the privileged documents are nonetheless discoverable. *Id.*

Here, we need not reach the second step because we find that the Government has not carried its burden of showing that the deliberative process privilege applies. In its response brief, the Government argues that many of the interrogatories are improper because they seek "pre-deliberative information," such as drafts and communications among the government investigators. (*See, e.g.*, Doc. No. 22 at pp. 4–5.) But a broad invocation of the privilege by government attorneys in a legal brief is improper.

Instead, "to assert the deliberative process privilege the government must satisfy three procedural requirements." *Del. River Network v. Del. River Basin Comm'n*, Civ. A. No. 10-5639 (AET), 2013 WL 12430331, at *2–3 (D.N.J. Apr. 15, 2013). First, "the head of the department with control over the matter must make a formal claim of privilege after actually considering the issue." *Id.* at *3 ("The formal claim of privilege must be lodged by the officials themselves and not by attorneys for the agency," and the "officials must personally review the materials to determine that the public interest . . . would best be served by nondisclosure.") (quotation marks omitted); *see also United States v. Reynolds*, 345 U.S. 1, 7–8 (1953) ("There must be formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer."). "Second, the relevant department head must provide an affidavit supporting the assertion of the privilege," which gives "precise and certain reasons for preserving the confidentiality of the governmental communications." *Del. River Network*, 2013 WL 12430331, at *3 (quotation marks omitted). "Third, the government must identify and describe the information or the documents sought to be shielded from disclosure." *Id.*

This process ensures that a claim of privilege is not casually invoked. *United States v. O'Neill*, 619 F.2d 222, 225 (3d Cir. 1980). In *O'Neill*, the Third Circuit emphasized the importance of properly asserting any claim of privilege:

> [This process] gives each party the opportunity to analyze the request and the corresponding objection, and gives the court a fuller record on which to base its ruling. It also provides some assurance that the party asserting the privilege has directed his or her attention to the scope of the claim being asserted.

*Id.*; *see also, e.g.*, *Scott Paper Co. v. United States*, 943 F. Supp. 489, 496 (E.D. Pa. 1996) (describing the deliberative process privilege as a form of executive privilege). In *O'Neill*, the United States Civil Rights Commission served subpoenas upon the Commissioner of the Philadelphia Police Department and other Department officials, requesting the production of

documents and records related to investigations of reports of brutality by the named officers. *O'Neill*, 619 F.2d at 224. The officials refused to provide some of the documents, claiming multiple privileges, including the executive or "governmental" privilege. *Id.* at 225. This privilege was "alluded to in the City's legal memorandum" and mentioned by the City Solicitor during oral argument. *Id.* The Third Circuit found "unsatisfactory the manner in which the City asserted its claim of privilege," noting in particular that it was "invoked orally, although there was ample opportunity to prepare a written formal claim of privilege." *Id.* In addition, the privilege was invoked by the attorney for the City instead of the department head, and there was "no indication that the privilege was being invoked by the responsible public official on the representation that he had personally examined the documents." *Id.* Last, "it was a broadside invocation of privilege, which failed to designate with particularity the specific documents or file to which the claim of privilege applied." *Id.*; *cf. Resident Advisory Bd. v. Rizzo*, 97 F.R.D. 749, 752 (E.D. Pa. 1983) (ordering disclosure of documents after finding that the agency "has not properly asserted the predecisional deliberative process privilege").

Like the City officials in *O'Neill*, the Government asserts a broad claim of privilege in response to multiple interrogatories. The Government argues that it "properly asserts the privilege" because it consulted with "the USDA Office of General Counsel (*i.e.*, the counsel to the Secretary of Agriculture)," but consultation with the relevant agency's general counsel is not the standard. (Doc. No. 22 at p. 5.) Seeming to recognize as much, the Government states in a footnote that if the Court "wishes to have a declaration for USDA supporting the assertion of privilege, the government can provide one." (*Id.* at p. 5 n.5.) It argues, however, that "the government should not be burdened with such a requirement" because the interrogatories are improper for other reasons. (*Id.*) As explained above, it is the Government's burden to properly assert the deliberative

process privilege. It has not met that burden, so the Court must reject its claim of privilege. To the extent that the Government may wish to assert the privilege again in the future, we expect it to follow the procedures outlined by the controlling caselaw.

B.

Because the Government failed to properly assert the deliberative process privilege, we will analyze each interrogatory on its own terms to determine first, whether the Plaintiffs have shown that they seek relevant information, and if so, whether the Government was justified in not responding.

***Interrogatory No. 4(B)***

Interrogatory No. 4 asks whether "[p]rior to the issuance of the final agency decision, did a supervisor review it and provide corrections or any other guidance before it was issued to Plaintiffs." (Doc. No. 21 at p. 22.) If so, Interrogatory No. 4(B) asks the Government to "[p]rovide all documents related to any corrections, revisions, of the Decision before it was finalized." (*Id.*) The Government responded to Interrogatory No. 4 by stating that the "Administrative Decision was decided solely by Lorie Conneen, the Administrative Review Officer, and that there was no supervisory review of the Administrative Decision before it was issued." (*Id.* at p. 31.) The Government then objected to subpart B on the grounds that it "calls for the production of documents." (*Id.*)

In their Motion to Compel, the Plaintiffs argue that they may ask for the production of documents in interrogatories, citing two out of circuit cases for the proposition that "courts have held that when an interrogatory legitimately requests factual support, it is incumbent upon the responding party to provide an answer with relevant, supporting facts."[3] (*Id.*) The Government

[3] The cases cited by the Plaintiffs do not hold that a party may seek documents in response to an interrogatory. In *Mullins v. Prudential Insurance Co. of America*, the defendant responded to an interrogatory by

responds by reiterating that the interrogatory is "a document request masquerading as an interrogatory." (Doc. No. 22 at p. 4.)

The Court will deny the Motion to Compel as to this request. Assuming for the sake of argument that "documents related to any corrections [or] revisions[ ] of the Decision before it was finalized" are relevant to the issues in the case, the interrogatory is improper to the extent it asks the Defendants to produce documents. The distinction between interrogatories and document requests may seem like semantics to the Plaintiffs, who chose not to discuss the relevant procedural rules in their motion to compel. (*See* Doc. No. 21 at p. 8 n.1 ("Plaintiffs will not present an overview of the law and statutes that apply to the filing of this Motion. Plaintiffs present the applicable rule(s) to be Fed. R. Civ. P. 37, 34, 33, 26(b)(1).").) However, a "party must first prove that it sought discovery in the manner required by the rules of procedure" before it can "succeed on a motion to compel discovery." *Camiolo v. State Farm Fire & Cas. Co.*, 334 F.3d 345, 360 (3d Cir. 2003). Because the Plaintiffs have not sought documents from the Government under Rule 34, their motion to compel the production of documents in response to Interrogatory No. 4(B) is improper and will be denied.[4] *See* Fed. R. Civ. P. 37(3)(B)(iv) (stating that a party may move

---

referring to the "plan documents" that it had produced under seal and citing to Federal Rule of Civil Procedure 33(d), which allows a party to respond to discovery by specifically referencing documents that contain the information sought. 267 F.R.D. 504, 514 (W.D. Ky 2010). The district court found that this "general reference to a mass of documents or records" was not an accurate response to an interrogatory and that the plaintiff was "entitled to have [the defendant's] explanation for the factual basis of its affirmative defenses set forth in its answer, rather than a passing reference to the existence of the administrative record." *Id.* at 514–15. Similarly, the court in *ABX Logistics (USA), Inc. v. Menlo Logistics, Inc.* ordered the plaintiff to respond to interrogatories seeking "details of the factual basis" for their allegations. Civ. A. No. 09-CV-12792, 2011 WL 824683, at *2 (E.D. Mich. Mar. 7, 2011) (ordering written responses and not the production of documents in response to the challenged interrogatories). Neither case supports the Plaintiffs' argument that they may request documents in response to their interrogatories.

[4] The Plaintiffs also argue that the Government's answers to other interrogatories show that four individuals had "some dealing in determining that Plaintiffs[ ] trafficked in SNAP benefits," but it is "unclear to Plaintiffs which individual made what findings concerning the ultimate decision of trafficking." (Doc. No. 21 at p. 11.) "To that end, it is unclear if there was any clarifications or changes that related to said determination," and "it is unclear if any bias for the individuals noted influenced said determination." (*Id.*) The Government argues that it is not clear what information the Plaintiffs seek because the Plaintiffs defined "Decision" as the April 8, 2019 decision decided by Lorie L. Conneen, and their motion "does not clarify why they would need more" on that final administrative

to compel the production of documents only after the opposing party fails to produce them in response to a request under Federal Rule of Civil Procedure 34); *see also Saliga v. Chemtura Corp.*, No. 3:12cv832 (RNC), 2013 WL 6247219, at *1 n.5 (D. Conn. Nov. 26, 2013) ("To the extent that the plaintiff includes a request for documents in addition to written response [in the interrogatories], such a request is improper. Fed. R. Civ. P. 34 is the procedural vehicle by which to request production of documents.").

***Interrogatory No. 7***

Interrogatory No. 6 asks the Government to "define 'Trafficking' of SNAP benefits as it was used in making the Decision." (Doc. No. 21 at p. 23.) Interrogatory No. 7 then asks: "If the response to Interrogatory #6 herein is a legal definition, provide the individual [responding to the interrogatories] or his/her supervisor(s) interpretation of the legal definition as it relates to the Decision." (*Id.*) The Government responded to Interrogatory No. 6 by quoting the definition of "Trafficking" given in 7 C.F.R. § 271.2, and it objected to Interrogatory No. 7 as seeking a legal conclusion. (*Id.* at p. 32–33.)

In their Motion to Compel, the Plaintiffs argue that "the central issue of this case and that is being sought through this interrogatory is the definition of Trafficking in SNAP benefits and how that definition was applied to Plaintiffs' facts." (*Id.* at p. 12.) In other words, they want to know "who made the decision, what went into making that decision and how the legal standard was interpreted and applied to the facts" in this case. (*Id.*) In response, the Government argues that the central issue in this case is not the agency's finding, but the underlying question of whether

---

decision or on the underlying charging decision by investigators. (*Id.*) We will not order the Government to provide further information at this time. For one, the Plaintiffs have moved to compel a response related to Interrogatory No. 4(B), which does not ask for information but instead seeks only the production of documents. Second, to the extent the Plaintiffs seek supplemental information related to the Government's response to Interrogatory No. 4 or 4(C), we agree with the Government that it has answered the question posed by the Plaintiffs and if the Plaintiffs wish for clarification on that response, they must seek it through additional discovery.

the Plaintiffs engaged in trafficking. In addition, they argue that Interrogatory No. 7 improperly asks "for a legal interpretation of 'Trafficking' as set forth in 7 C.F.R. § 271.2." (Doc. No. 22 at pp. 5–6.)

We agree with the Government that the primary issue in this case is whether the Plaintiffs engaged in trafficking of SNAP benefits. However, the Court finds that the Government's conclusion on this very issue and the evidence considered in reaching that conclusion are undeniably relevant to the case. *See, e.g.*, *Bell v. Lockheed Martin Corp.*, 270 F.R.D. 186, 191 (D.N.J. 2010) (defining relevant discovery as discovery that appears "reasonably calculated to lead to the discovery of admissible evidence") (quotation marks omitted).

The Government argues that even if the interrogatory seeks relevant information, it remains improper because it asks for a legal conclusion. "Under Federal Rule of Civil Procedure 33, an interrogatory is not necessarily objectionable merely because an answer to the interrogatory involves an opinion or contention that relates to fact or to the application of law to fact." *Am. Civ. Liberties Union v. Gonzales*, Civ. A. No. 98-5591, 2005 WL 8178698, at *3 (E.D. Pa. Dec. 29, 2005); *see also Russo v. Abington Memorial Hosp.*, No. Civ. A. 94-195, 1996 WL 165493, at *2 (E.D. Pa. Apr. 3, 1996) ("The Advisory Notes to Rule 33 indicate that the rule was intended to permit a party to 'narrow and sharpen the issues' through interrogatories seeking the application of law to fact, but not to allow interrogatories seeking purely legal conclusions.") (quoting adv. cmt. to Fed. R. Civ. P. 33). Here, the Plaintiffs ask the Government to explain its conclusion that the Plaintiffs engaged in trafficking of SNAP benefits. This is not a "purely legal conclusion" but instead seeks the application of law (the definition of "trafficking") to the facts of this case.

The Motion to Compel a response to Interrogatory No. 7 will be granted.

***Interrogatory No. 12***

Interrogatory No. 12 asks "what is noticed that would not show that Plaintiff engaged in Trafficking of SNAP benefits. If there is nothing to show that Plaintiffs may not have engaged in Trafficking in SNAP benefits, please explain why." (Doc. No. 21 at p. 24.) The Government raised five objections:

> (1) it is vague and ambiguous; (2) it calls for a legal conclusion; (3) it is overly broad and unduly burdensome . . . (4) it seeks information and materials protected by the deliberative process, attorney-client, work product, and/or law enforcement privileges; and (5) impermissibly seeks to shift the burden in this case because Plaintiffs, as the parties challenging the administrative decision, bear the burden to prove by a preponderance of the evidence that Plaintiffs did not commit each trafficking violation as found by FNS.

(*Id.* at p. 35.)

In their Motion to Compel, the Plaintiffs assert that "[a]t no time does Defendant in its administrative record provide any guidance as to what in the instant case, or generally, would fall outside of the trafficking definition." (*Id.* at p. 12.) Citing an opinion from the Southern District of New York, they argue that a party is precluded from disclosing only self-serving communications, while barring discovery of other communications that support the party's adversary. (*Id.*) In their response brief, the Government argues that they should "not have to prove a negative in a detailed narrative interrogatory answer, especially when . . . Plaintiffs bear the burden to show that trafficking did not occur." (Doc. No. 22 at p. 6.)

Although not entirely clear, the interrogatory appears to ask the Government to identify any mitigating facts or evidence that it considered in reaching its conclusion that the Plaintiffs engaged in trafficking of SNAP benefits. To that end, the Court finds that the request seeks relevant information and does not request a purely legal conclusion. However, the second sentence of the interrogatory states that if there is no evidence which tends to show that the Plaintiffs did not engage in trafficking, the Government should explain why. To the extent the request asks the

Government to explain why there are no facts in support of Plaintiffs' position, we agree with the Government that it cannot be compelled to explain the nonexistence of facts. Similarly, the interrogatory could also be interpreted as asking the Government to explain why the Plaintiffs did *not* engage in trafficking when the Government's ultimate conclusion was that the Plaintiffs *did* engage in trafficking. To the extent the interrogatory requests such an answer, we agree with the Government that it in effect seeks a legal conclusion on the meaning of trafficking generally and asks the Government to make out the Plaintiffs' case for them. *See Russo*, 1996 WL 165493, at *2 (explaining that the advisory committee notes draw a line between interrogatories seeking the application of law to fact, which are allowed, and those which seek "purely legal conclusions," which are not).

The Motion to Compel a response to Interrogatory No. 12 will be granted in part and denied in part.

***Interrogatory No. 16***

Interrogatory No. 16 begins by quoting the Government's decision, which states that "[e]ven if the invoices provided [by the Plaintiffs] appear to indicate that the [Plaintiffs] purchased sufficient food inventory to account for the firm's SNAP redemption volume, sufficient inventory alone does not explain the suspicious pattern of SNAP transactions." (*See* Doc. No. 21 at p. 24.) The interrogatory then asks the Government to "explain this statement" and "why Plaintiff cannot [rely on the inventories to] show trafficking of SNAP benefits did not occur." (*Id.*) It also asks the Government to "provide a detailed understanding of the . . . individual's subjective reasoning related to trafficking in SNAP benefits and the more likely than not standard." (*Id.*) In response, the Government objected to this interrogatory because "it calls for a legal conclusion." (Doc. No. 21 at p. 37.) As with their response to Interrogatory No. 12, the Government also objected to the

interrogatory as overly broad and unduly burdensome, as seeking privileged information, and as attempting to shift the burden of proof. (*Id.*)

In their Motion to Compel, the Plaintiffs once again note that they are "seeking information concerning the rational[e] in formulating Defendants' decision." They argue that the statement in the final decision "needs to be clarified" and only "Defendants can clarify this statement and provide what impact, if any, it had in making the Trafficking determination." The Defendants respond that the administrative record provides a "full explanation of why the invoices submitted by Plaintiffs do not refute a finding of trafficking."

A review of the administrative record shows that the final decision explains why the agency found the invoices insufficient to refute a finding of trafficking.[5] (*See, e.g.*, Doc. No. 1 at pp. 24–25.) Therefore, we agree with the Government that a review of the administrative record is an alternative, less burdensome means of getting this information. *Am. Civ. Liberties Union*, 2005 WL 817878698, at *1 (explaining that a court may limit discovery if the "discovery sought is . . . obtainable from some other source that is more convenient, less burdensome, or less expensive"). Similarly, we find that the interrogatory's request for "a detailed understanding of the . . . individual's subjective reasoning related to trafficking in SNAP benefits and the more likely than not standard," appears to impermissibly seek a legal opinion. *See Russo*, 1996 WL 165493, at *2. In addition, there are alternative, less burdensome means of getting this information, such as a deposition of the relevant individual.

The Motion to Compel as to Interrogatory No. 16 will be denied.

[5] Among other things, the final decision notes that the invoices included only total sales per day and were not itemized by SNAP sales, cash, credit, etc., meaning that although the store purchased enough food to cover the SNAP redemptions, it was not clear whether SNAP redemptions were actually used by customers to buy that food. (*Id.*) In addition, about 20% of the records were for other stores, dates outside of the review period, or for sales of ineligible items. (*Id.*) Last, the final decision identifies the contrary evidence and considerations that the Government found supported its conclusion. (*Id.*)

II.

The Plaintiffs also request that the "various general objections," including assertions of the attorney-client privilege and the work product doctrine, be stricken because "[n]one of the [i]nterrogatories in dispute requested information applicable" to these protections. (Doc. No. 21 at p. 14.) The Government's response included one "general objection," that the Plaintiffs' interrogatories "exceed the limit in Rule 33(a)(1) of no more than 25 written interrogatories, including all discrete subparts." (*Id.* at p. 27.) The Court will not strike this objection, which appears to be justified. Neither will we strike the Government's assertions of attorney client privilege and work product doctrine made in response to certain individual interrogatories. These objections are not clearly inapplicable. For example, Interrogatory No. 16 seeks a "detailed understanding of the extent of the individual's subjective reasoning related to trafficking in SNAP benefits." (Doc. No. 21 at p. 37.) It is possible that this "subjective reasoning" would touch on conversations between the agency officials and government attorneys that could reasonably be covered by the attorney-client privilege.

III.

The Motion to Compel Responses to Plaintiffs' Interrogatories and to Strike Defendants' General Objections is granted in part and denied in part. Consistent with this opinion, the Government will respond to Interrogatory No. 7. The Government will also respond to Interrogatory No. 12 to the extent it asks the Government to identify mitigating facts and evidence that it considered in reaching its ultimate decision. If, in response to either request, the Government wishes to reassert the deliberative process privilege, it should follow the procedures outlined in the controlling case law. The remainder of the Motion is denied.

An appropriate order follows.