IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **THREE BROTHERS SUPERMARKET INC.,** **et al.**, | **CIVIL ACTION** |
| Plaintiffs, | **NO. 2:19-cv-2003-KSM** |
| *v.* | |
| **UNITED STATES OF AMERICA,** | |
| Defendant. | |

**MEMORANDUM**

**Marston, J.**                                                          **September 25, 2020**

The Plaintiffs in this case are Three Brothers Supermarket Inc., a small grocery store in Philadelphia, and Jenny M. Espinal Tejada, the store's owner.  (Doc. No. 1 at p. 1, ¶ 1.)  They sued the United States after the United States Department of Agriculture (USDA) permanently disqualified Three Brothers from participating in the Federal Supplemental Nutrition Assistance Program (SNAP).  (*Id.* at p. 4, ¶ 17.)  The Government disqualified the store after it found that Three Brothers engaged in unusual and irregular SNAP activity from October 2017 through March 2018 and that this behavior was evidence of "trafficking"[1] in violation of 7 C.F.R. § 278.6(e)(1). (*Id.* at p. 4, ¶ 16.)

During its investigation, the Government collected information about the individual SNAP members who shopped at Three Brothers and analyzed sales, inventory, and SNAP-usage data for it and nearby, comparator stores.  Because discovery in this case, including the administrative

---

[1] USDA regulations define "trafficking" as, among other things, the "buying, selling, stealing or otherwise effecting an exchange of SNAP benefits . . . for cash or consideration other than eligible food, either directly, indirectly, in complicity or collusion with others, or acting alone."  7 C.F.R. § 271.2.

record, will include identifying information about third parties, confidential business information for comparator stores, and information related to the agency's investigative procedures and techniques, the parties entered a Stipulated Protective Order.  (*See* Doc. No. 19 at p. 14.)  The Government filed an unopposed motion for court approval of that stipulation and entry of an order permanently sealing portions of the administrative record.  (*Id.*)  We address the protective order before turning to the Government's sealing request.

I.

Under Federal Rule of Civil Procedure 26(c), the Court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c); *see also In re Avandia Mktg. Sales Practice & Prods. Liab. Litig.*, 924 F.3d 662, 671 (3d Cir. 2019) (explaining that the "party seeking a protective order over discovery material must demonstrate that good cause exists for the order") (quotation marks omitted); *see also Sprinturf, Inc. v. Sw. Recreational Indus., Inc.*, 216 F.R.D. 320, 323 (E.D. Pa. 2003) ("Protective orders stipulated between the parties are not guaranteed judicial approval" and "must still meet the requirements of Rule 26(c), which requires demonstrating the existence of confidential information and good cause as to why such information should not be disclosed.").

"Good cause means that disclosure will work a clearly defined and serious injury to the party seeking closure," and the injury "must be shown with specificity."  *In re Avandia*, 924 F.3d at 671.  In determining whether good cause exists, the court considers whether:

1.  The disclosure will violate any private interests;

2.  Disclosure of the information will cause a party embarrassment;

3.  The information is being sought for a legitimate purpose or for an improper purpose;

4.  The sharing of information among the litigants will promote fairness and efficiency;

5.  Confidentiality is being sought over information important to public health and safety;

6.   A party benefitting from the order of confidentiality is a public entity or official; and

7.   The case involves issues important to the public.

*Id.* at 671–72.   In this case, the parties seek protection over three categories of discovery: household information for individual SNAP members (including names, demographics, identifying numbers, and transaction histories), business information for comparator stores (including names, addresses, sales dates, and inventory records), and internal documents for the Food and Nutrition Service (FNS) (including the Government's policy memoranda and Standard Operating Procedures).   (Doc. No. 19 at pp. 17–18.)

The Court finds that the *Pansy* factors weigh in favor of protecting this information. First, the Court agrees that public disclosure of this information will harm the privacy interests of nonparties to the extent the documents contain names, addresses, identifying numbers, SNAP information, and financial records for individuals and businesses.   Likewise, public disclosure of this information — and in particular, the SNAP members' personal and financial information — could cause embarrassment to the individuals identified in the documents.   Although disclosure of the Government's internal memoranda and policy documents is unlikely to cause embarrassment, disclosure could harm the Government's ability to enforce its regulations because it would place the Government's investigative procedures in the hands of would-be traffickers.   Therefore, the first and second factors weigh in favor of a protective order.

The Court agrees with the parties that the documents are relevant to this lawsuit and that their production will promote fairness and efficiency during discovery, so the third and fourth factors also weigh in favor of protection.   Fifth, the names, addresses, identifying numbers, and financial information of third-party individuals and businesses is of little importance to the general public health and safety.   Last, the Court acknowledges that the Government is a party in this case and the Government's investigation into the use of SNAP benefits involves issues

important to the public.  However, we find that the sixth and seventh factors weigh only

marginally in favor of disclosure of the Government's internal documents, such as policy

memoranda and Standard Operating Procedures.  *Cf. Miskiel v. Equitable Life Assur. Soc. of*

*U.S.*, No. Civ. A. 98-3135, 1999 WL 95998, at \*4 (E.D. Pa. Feb. 24, 1999) ("The public interest

does not require that the government turn over to a private litigant, documents revealing its

investigative procedures . . . .").  And neither the sixth nor seventh *Pansy* factors favor disclosure

of the personal identifying information, financial information, and confidential business

information of private individuals and businesses.  For those reasons, the Court will grant the

Government's Motion and approve the parties' Stipulated Protective Order.[2]

## II.

Next, the Government asks the Court to permanently seal portions of the administrative

record.

---

[2] The information covered by the protective order also implicates the Federal Privacy Act, 5 U.S.C. § 552a, which "creates a statutory ban on the disclosure of information contained in government files, allowing the Government to release information about individuals only under certain enumerated circumstances, including when ordered to do so by court order." *In re Petition of McAllister Towing & Trans. Co.*, No. Civ. A. 02-858, 2004 WL 887375, at \*1 n.1 (E.D. Pa. Apr. 22, 2014).  As discussed above, discovery in this case will require disclosure of Government records that contain personal identifying information of private individuals, including their names, addresses, and financial information.  "The Privacy Act does not specify the standard by which [ ] disclosure may be ordered and there has been some disparity among the courts on the appropriate standard." *Miskiel*, 1999 WL 95998, at \*3.  Some courts apply the usual discovery standard, while others balance the need for disclosure against the potential harm of disclosure. *See id.* (collecting cases).

Under either test, disclosure is warranted here.  Under the first test, the identifying information of individual nonparties is relevant to whether the Government was justified in concluding that Three Brothers trafficked in SNAP benefits because the Government relied on that information in reaching its conclusion. *See* Fed. R. Civ. P. 26(b)(1) (stating that "relevant" information "need not be admissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence"); *see also Forrest v. United States*, No. CIV. A. 95-3889, 1996 WL 171539, at \*2 (E.D. Pa. Apr. 11, 1996) ("[A] party can invoke discovery of materials protected by the Privacy Act through the normal discovery process and according the usual discovery standards, and the test of discovery is the relevance standard of FRCP 26(b)(1).").  Under the second test, the need to disclose this relevant information outweighs the potential harm caused by disclosure because this information is protected from broader dissemination by the parties' Stipulated Protective Order. *See Laxalt v. McClatchy*, 809 F.2d 885, 889 (D.C. Cir. 1987) ("[P]rotective orders and in camera inspection offer reliable means with which to give effect to liberal discovery principles without threatening [privacy] interests . . . .").

A.

A more rigorous standard applies when a party requests to seal judicial documents than applies to protective orders shielding discovery materials.  Once a discovery document becomes a judicial record, the common law presumption of the right of public access attaches.[3]  *In re Avandia*, 924 F.3d at 672 ("A 'judicial record' is a document that has been filed with the court or otherwise somehow incorporated or integrated into a district court's adjudicatory proceedings.") (quotation marks omitted); *see also Leucadia, Inc. v. Applied Extrusion Tech., Inc.*, 998 F.2d 157, 164 (3d Cir. 1993) ("We believe that our earlier decisions and those in other courts lead ineluctably to the conclusion that there is a presumptive right of public access to pretrial motions of a nondiscovery nature, whether preliminary or dispositive, and the material filed in connection therewith.").  However, this common law right of access is not absolute and may be rebutted by a showing that the "interest in secrecy outweighs the presumption."  *In re Avandia*, 924 F.3d at 672.  To meet this burden, the party requesting the sealing order must demonstrate that the "material is the kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure."  *Id.* (quotation marks omitted).

In addition to the common law right of access, which attaches to all judicial records, the public also has a First Amendment right of access in civil trials, which attaches to certain judicial documents.  *Id.* at 673.  The First Amendment right of access presents an even higher burden than the common law right of access, and the party requesting that trial documents be sealed must overcome strict scrutiny.  *Id.*  Specifically, the party must demonstrate "an overriding interest in excluding the public based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest."  *Id.*

---

[3] Because the administrative record has been filed on the Court's docket and will be incorporated into the parties' summary judgment materials, it is a "judicial record" to which the common law right of access attaches.

Under either the common law or First Amendment standard, when a court analyzes a request for a sealing order, it must do so on a document-by-document basis, and the proponent of the sealing order must articulate with specificity the injury that would result if the particular document or parts of it were made public. *Id.* Merely reciting the *Pansy* factors in seeking a sealing order is insufficient. Although they provide useful guidance when the court balances the public versus private interests, the *Pansy* factors "are not sufficiently robust for assessing the public's right to access judicial records." *Id.* at 676–77 ("[T]he *Pansy* factors are not a substitute for the common law right of access standard — which begins with the presumption of access."); *see also In re Application of Storag Etzel GmbH*, Misc. C.A. No. 19-mc-209-CFC, 2020 WL 2949742, at *9 (D. Del. Mar. 25, 2020) ("In both substance and procedure, the burdens that must be overcome to justify the sealing of judicial records under the common law are dramatically less pliant than the factors to be weighed under *Pansy* in deciding whether a protective order is warranted.") And neither the second *Pansy* factor (whether disclosure will cause a party embarrassment) nor the third factor (whether the information is being sought for a legitimate or improper purpose) are relevant in deciding whether to enter a sealing order. *In re Avandia*, 924 F.3d at 676.

B.

The Court conducted an in-camera review of the unredacted Administrative Record. Broadly, the Government seeks an order sealing five categories of information: (1) identifying information about comparator stores, which would necessarily reveal store-level SNAP data,[4]

---

[4] Specifically, the Government redacted the names, addresses, phone numbers, and FNS numbers for comparator stores. (Admin. R. at 3, 7, 13, 17, 28–69, 157–68, 170–72, 173–88 209–31, 263, 266–88, 767, 773–93, 825.)

(2) identifying numbers and financial information for Three Brothers,[5] (3) personal identifying

and financial information for Tejada, SNAP members, and the owners of competitive stores,[6]

(4) the names of Government employees, Three Brothers' employees, and Three Brothers'

previous owner,[7] and (5) the percentage to which Three Brothers has higher SNAP transactions

than nearby comparator stores.[8]  The Court finds that the first three categories of information are

entitled to protection and will grant the sealing order as to those categories.  However, the

Government has not met its burden as to the last two categories, so the sealing order will be

denied as to those categories.

1.

We begin with the first three categories of information and the common law presumption

of public access.  Under the common law test, the Government has shown that disclosure of

comparator's business information, Three Brothers' financial account information, and the

personal identifying information of individuals is "the kind of information that courts will

protect" and that disclosure "will work a clearly defined and serious injury."  Indeed, much of

the redacted information is required to be redacted from electronically filed documents under this

Court's Local Rules because broad disclosure would harm the financial and privacy interests of

the individuals identified.  *See* E.D. Pa. L.R. 5.1.2(12)(b) ("Social security numbers, dates of

---

[5] The Government redacted Three Brothers' tax ID numbers, entity number, and bank account information. (Admin. R at 26, 123, 131.)

[6] The Government redacted Tejada's birthdate, address, photograph, social security number, and other identifying numbers (Admin. R. at 5–6, 138–43), the names and social security numbers for the owners of comparator stores (*id.* at 4, 8, 14, 18), and SNAP members' names, birth dates, addresses, account numbers, household numbers, and card numbers (*id.* at 144–56, 173–207, 209–31, 263–66, 276–88, 769–71).

[7] The Government redacted the full names of the Government's on-site reviewers (Admin. R. 28–117, 234–48), Three Brothers' previous owner (*id.* at 126–30, 132–37), and Three Brothers' employees who were interviewed by the on-site reviewer (*id.* at 253, 766, 825).

[8] For example, one redaction appears as:  "In fact, these 640 transactions had an amount at least [redacted] higher than the average transaction amount ($8.79) for Small Grocery Stores in Philadelphia County, PA, which carry a larger variety of staple food items to include more fresh produce and fresh meat."  (Admin. R. at 264.)

7

birth, [and] financial account numbers . . . should be modified or partially redacted in electronically filed documents.").  In addition, although the Court does not consider the second or third *Pansy* factors in conducting the common law test, the other *Pansy* factors may inform our decision.  *See In re Avandia*, 924 F.3d at 676 ("[T]he *Pansy* factors may provide useful guidance for courts conducting the balancing required by the common law test . . . .").  As discussed above, those factors weigh in favor of protecting the personal identifying and financial information of private individuals and businesses.

Our review of the redacted information confirms these conclusions.  First, disclosure of comparator information, including store names, FNS numbers, sales records, and inventory data, would cause substantial harm to third-party businesses, because competitors could use that information and the store-level SNAP data included in the administrative record to gain a present competitive advantage.  *Id.* (acknowledging that material containing proprietary business information may be entitled to protection if disclosure would cause a concrete, particularized, and present commercial or competitive harm); *cf. Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2361, 2366 (2019) (noting that public disclosure of store-level SNAP data can substantially threaten a store's competitive position and for that reason, store-level SNAP data was exempt from public disclosure under the Freedom of Information Act); *Fed. Trade Comm. v. Thomas Jefferson Univ.*, Civ, A. No. 20-01113, 2020 WL 5519353, at *1 (E.D. Pa. Sept. 14, 2020) (granting motion to seal exhibits "because they contain future financial and budget projections, future strategic plans, and other business information that, if disclosed, might harm a Defendant's ability to compete").

Similarly, broad disclosure of Three Brothers' tax ID numbers and bank account numbers would cause financial injury to the store.  *Cf. Grouse River Outfitters Ltd. v. Oracle Corp.*, No.

8

16-cv-02954-LB, 2019 WL 8752333, at \*2 (N.D. Cal. Sept. 27, 2019) ("The Court grants the

motion to seal with respect to the tax identification numbers and wire transfer instructions.").

Last, public disclosure of Tejada's and other individuals' full names, social security numbers,

account numbers, household numbers, birthdates, and private addresses would harm those

individuals' privacy and financial interests. *Cf. United States ex rel. Brasher v. Pentec Health,*

*Inc.*, 338 F. Supp. 3d 396, 402 (E.D. Pa. 2018) ("Courts considering requests to keep certain

documents sealed have, in general, lifted the seal on the entire record except for specific

documents that . . . harm non-parties."); *Application of Storag Etzel GmbH*, 2020 WL 2949742,

at \*11 n.3 ("Because motions to seal material so commonly occur in commercial and corporate

litigation, the vocabulary through which courts describe the harm often references trade secrets

and proprietary business practices.  But harms sufficiently specific and serious might also be

demonstrated in non-business litigation contexts, in which compelling privacy, safety, health or

similar interests are at stake.").  For those reasons, we find that the Government has overcome

the common law presumption of public access as to these portions of the administrative record.

Because the Government has overcome the common law presumption of public access as

to the first three categories of information, we will grant the Motion and order the sealing of the

unredacted administrative record to the extent it contains personal identifying and financial

information. [9]

---

[9] In addition to the administrative record, the Government also requests a sealing order over any "references to the unredacted record," including references made in summary judgment papers. (Doc. No. 19 at pp. 3, 5.)  It is unclear whether the First Amendment standard, in addition to the common law test, applies to a motion to seal summary judgment materials.  *See In re Avandia*, 924 F.3d at 673 ("It remains an open question in this Circuit whether the First Amendment right of access applies to records of summary judgment proceedings.").  The majority in *In re Avandia* limited its analysis to the common law test and did not analyze whether a motion to seal summary judgment materials is also subject to First Amendment scrutiny.  *Id.* at 680 (following other Third Circuit cases that declined to reach the First Amendment analysis because the proponent had not overcome the common law right of access).  However, the Third Circuit advised that we use "a two-prong test to assess whether the right of access attaches: (1) the experience prong asks whether the place and process have historically been open to the press; and (2) the logic prong evaluates whether public access plays a significant positive role in the functioning of the particular process in question." *Id.*  Although the majority did not reach this question, Judge Restrepo, concurring in

C.

The Court will not, however, grant the sealing order as to the last two categories of

information — the names of third parties (without any other identifying information) and the

percentage to which Three Brothers has higher SNAP transactions than nearby comparator

stores — because the Government has not overcome the common law presumption of public

access.

As to the first category of information, the Government redacted the full names of the

Government employees who conducted on-site reviews (*id.* 28–117, 234–48), Three Brothers'

employees who were interviewed by the on-site reviewer (*id.* at 253, 766, 825), and Three

Brothers' previous owner (*id.* at 126–30, 132–37). Because the only information in the

administrative record about these individuals is their names and limited employment history, the

compelling privacy justifications discussed above do not apply. And as for Three Brothers'

previous owner, his name is already a matter of public record because it is listed on the deed for

the store. *Cf. In re Application of Storag Etzel GmbH*, 2020 WL 2949742, at *29 (finding that

once the information is "in the public domain, there are little, if any, plausible justifications for

subsequently sealing the same material"). In short, the Government has not shown that the

names of these individuals — without any other identifying or financial information — is the

"kind of information that courts will protect," nor has it shown that "disclosure will work a

---

part and dissenting in part, opined that the First Amendment right of access does attach to summary judgment briefs. *See id.* at 681–84 (Restrepo, J., concurring in part and dissenting in part). The Second and Fourth Circuits have also held that the First Amendment right of public access extends to summary judgment materials. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 124 (2d Cir. 2006) ("[T]here exists a qualified First Amendment right of access to documents submitted to the court in connection with a summary judgment motion.); *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988) ("We believe that the more rigorous First Amendment standard should also apply to documents filed in connection with a summary judgment motion in a civil case."). Because the Government does not mention the First Amendment in its Motion, discuss its applicability, or analyze whether the strong constitutional presumption of public access is overcome, we cannot decide the issue at this time. If they wish, either party may file a motion to seal the portions of summary judgment materials that reference or rely on the sealed portions of the administrative record. The movant should discuss whether the First Amendment is implicated by the filing and if so, why the First Amendment presumption of access is overcome.

clearly defined and serious injury." *In re Avandia*, 988 F.2d at 672.  As for the second category,

the Government has provided no justification for sealing the percentage to which Three Brothers

has higher SNAP transactions than nearby comparator stores.  Without any discussion on that

issue, we cannot find that the Government has carried its burden of showing with specificity that

the "material is the kind of information that courts will protect and that disclosure will work a

clearly defined and serious injury to the party seeking closure."  *Id.*

     For those reasons, the court will deny the Government's motion to the extent it asks us to

seal the full names of Government and Three Brothers employees and the percentage to which

Three Brothers had higher SNAP transactions than comparator stores.

III.

     The Government's Motion is granted in part and denied in part.  The Motion is granted to

the extent it seeks approval of the parties' Stipulated Protective Order.  It is also granted to the

extent it seeks a sealing order over identifying and financial information for Three Brothers,

comparator stores, Tejada, and SNAP members contained in the administrative record. [10]  The

rest of the Motion is denied.  The Government should file a new redacted version of the

administrative record that is consistent with this opinion.

     An appropriate order follows.

---

[10] The Court's Local Rules state that a document filed under seal will remain sealed for two years after the conclusion of the civil action including all appeals, unless the Court orders otherwise.  E.D. Pa. L.R. 5.1.5(b)(2).  If the document is still sealed at the conclusion of the two-year period, the Clerk of Court "shall notify the attorney for the party having submitted the sealed document at the attorney's address on the docket that the document will be unsealed unless the attorney or the submitting party advises the Clerk within sixty (60) days that said attorney or submitting party objects."  *Id.* at L.R. 5.1.5(c).  The Government requests an order indefinitely sealing the redacted portions of the administrative record, but the Court is not inclined to depart from the procedure set out in the Local Rules.  If appropriate, the Government may renew its request for a continued sealing order at the conclusion of the two-year period.

11