## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **THREE BROTHERS SUPERMARKET INC., et al.**, | **CIVIL ACTION** |
| Plaintiffs, | **NO. 2:19-cv-2003-KSM** |
| *v.* | |
| **UNITED STATES OF AMERICA,** | |
| Defendant. | |

### MEMORANDUM

**MARSTON, J.**                                                              **March 25, 2022**

Plaintiff Three Brothers Super Market Inc. ("Three Brothers") and its owner Plaintiff Jenny M. Espinal Tejada bring suit against the United States seeking judicial review of a determination by the United States Department of Agriculture's Food and Nutrition Service ("FNS") permanently disqualifying Three Brothers from participating in the Supplemental Nutrition Assistance Program ("SNAP").  (Doc. No. 1.)  Presently before the Court are the Government's motion for summary judgment (Doc. No. 31) and Plaintiffs' motion for summary judgment (Doc. No. 32).  For the reasons below, the Government's motion is granted, and Plaintiffs' motion is denied.

## I.       BACKGROUND

### A.       Factual Background

Viewing the evidence in the light most favorable to Plaintiffs, the relevant facts are as follows.

Tejada owns and operates Three Brothers, a convenience store located in Northwest

Philadelphia.  (Doc. No. 31-1 ¶¶ 3–5, 7.)  The store offers canned and frozen meat, poultry, and fish and a limited selection of produce.  (*Id.* ¶ 6.)  The store primarily sells deli meats, canned and frozen foods, infant formula, soft drinks, and household items, such as cleaning supplies and paper products.  (*Id.*)

In 2017, Three Brothers was authorized to accept SNAP benefits as a convenience store.  (Doc. No. 31-1 ¶¶ 5, 8.)  SNAP provides qualifying low-income households funds with Electronic Benefit Transfer ("EBT") cards.  (*Id.* ¶ 2.)  These cards, which are essentially pre-loaded debit cards, allow the beneficiaries to purchase eligible food from qualifying retailers.  (*Id.*)  FNS, a division of the United States Department of Agriculture, administers and oversees the program.  (*Id.* ¶ 1.)

In 2018, FNS's Anti-Fraud Locator Using Electronic Benefit Transfer Retailer Transactions ("ALERT") system identified suspicious EBT transactions at Three Brothers, and FNS launched an investigation of the store.  (*Id.* ¶ 10.)  FNS sent an investigator to the store "to observe the nature and scope of the firm's operation, stock, and facilities."  (*Id.* ¶ 12.)  The investigator discovered that Three Brothers offered "a moderate stock of SNAP eligible foods with no fresh meats, poultry, or seafood, a limited variety of frozen meats, and a limited amount and variety of fresh produce."  (Doc. No. 32-1 at 33.)  He also found that the store offered "only a few expensive eligible foods."  (*Id.*)  In addition to the on-site visit, FNS reviewed Three Brothers' EBT transactions from the prior six months.  (Doc. No. 31-1 ¶ 11.)  FNS uncovered two atypical patterns:  (1) the same households were making multiple transactions in a short period of time; and (2) there were a high number of excessively large transactions.  (Doc. No. 32-1 at 31–32.)

### B.      Procedural History

On May 15, 2018, based on the findings from its investigation, FNS charged Three

Brothers with trafficking SNAP benefits.  (Doc. No. 31-1 ¶ 13.)  The store responded to the

charge letter on May 29, 2018 and submitted hundreds of pages of invoices, which it argued

proved the EBT transactions were legitimate.  (*Id.* ¶ 21.)  On August 29, 2018, FNS issued a

determination letter concluding that Three Brothers had engaged in the alleged trafficking

violations and permanently disqualified the store from accepting SNAP benefits.  (*Id.* ¶ 22.)

Three Brothers appealed the determination to FNS's Administrative Review Branch.  (*Id.*

¶ 24.)  On April 8, 2019, following her review of the evidence, FNS Administrative Review

Officer Lorie Conneen affirmed the disqualification.  (*Id.* ¶ 25.)  She concluded that there was

sufficient data to support a finding that Three Brothers had been trafficking SNAP benefits.

(Doc. No. 32-1 at 23–39.)

Officer Conneen agreed that the unusual transaction patterns supported a finding of

SNAP trafficking.  (*Id.* at 30.)  As to the first pattern, Officer Conneen explained that having the

same household conduct multiple transactions in a short period of time "is a method which

violating stores use to avoid single high dollar transactions that cannot be supported by a

retailer's inventory and structure."  (*Id.*)  Three Brothers attempted to explain these irregularities,

but Officer Conneen found its arguments unpersuasive.  (*Id.*)  For instance, Three Brothers

argued that an individual may have made multiple transactions in the same day if they forgot to

purchase some items on their initial trip.  (*Id.*)  Officer Conneen rejected this argument because

"[t]he second, third, and fourth transactions in each set [were] too large to consist of forgotten

items."  (*Id.*)

Officer Coneen also found that the "excessively large purchase transactions" further

supported a finding that Three Brothers had been SNAP trafficking.  (*Id.* at 32.)  She explained

that most of the items the store sells are "accessory food items" like snack foods and candy,

which made it very unlikely that customers would be incurring such high charges.  (*Id.*)  She

considered and rejected Three Brothers' attempts to explain the pattern of large transactions.  (*Id.*

at 33.)  For instance, Three Brothers attributed the atypically high transaction costs to the fact

that its customers purchased infant formula, which is very expensive.  (*Id.*)  Officer Conneen

acknowledged that Three Brothers sold formula but explained that most households that have

young children and receive SNAP benefits also receive supplemental benefits from the Women,

Infants, and Children ("WIC") program, and individuals are far more likely to use their WIC

funds to pay for formula so they can save their SNAP funds, which can be used to purchase a far

greater variety of food.  (*Id.*)

      Officer Conneen reviewed the invoices Three Brothers submitted but found that they did

not prove that the store had not engaged in SNAP trafficking.  (*Id.* at 35.)  Three Brothers

submitted invoices from grocery distributors, which it claimed demonstrated the legitimacy of

the transactions in question.  (*Id.*)  Officer Conneen agreed that the invoices showed that the

store was purchasing enough food to account for all of the SNAP transactions but explained that

they did not show that the store was purchasing enough food to account for any cash, credit,

debit, and check transactions.  (*Id.*)  She further explained that the invoices also failed to

"explain the suspicious patterns of SNAP transactions such as rapid and consecutive transactions

by individuals during the same store visit or in a single day."  (*Id.*)  Based on these findings,

Officer Conneen upheld FNS's determination.  (*Id.*)

      Following the issuance of Officer Conneen's decision, Plaintiffs initiated this action,

4

seeking judicial review of FNS's determination disqualifying Three Brothers from SNAP.[1]

(Doc. No. 1.)  Following a period of discovery, Plaintiffs and the Government cross-moved for

summary judgment.  (Doc. Nos. 31, 32.)  The Government argues that the Court should uphold

FNS's determination because Plaintiffs "cannot meet their burden to show by a preponderance of

the evidence that the extremely suspicious transactions were not trafficking."  (Doc. No. 31.)

Plaintiffs argue that the Court should reverse FNS's determination because Plaintiffs have

presented sufficient evidence "that the inventory within the stores justifies the [challenged]

transactions."  (Doc. No. 32.)  The Government opposes Plaintiffs' motion, but Plaintiffs have

not opposed the Government's motion.  (Doc. No. 33; *see generally* Case No. 19-cv-2003

Docket.)[2]

## II.    LEGAL STANDARD

### A.    *Judicial Review of FNS Determinations*

A store may seek judicial review of an FNS determination disqualifying it from

participating in SNAP by filing a complaint against the United States.  7 U.S.C. § 2023(a)(13).

"The suit . . . shall be a trial de novo by the court in which the court shall determine the validity

of the questioned administrative action in issue . . . ."  *Id.* § 2023(a)(15).  Because these cases are

---

[1] Plaintiffs also initially claimed that FNS violated the Fifth Amendment to the United States Constitution by selectively enforcing the law in pursuing SNAP trafficking charges against Three Brothers.  (Doc. No. 1.)  The Government moved to dismiss that claim (Doc. No. 4), and the parties stipulated to amend the complaint and dismissed the selective enforcement claim (Doc. No. 9).

[2] Pursuant to Judge Marston's policies, the Government filed a statement of undisputed facts in support of its motion for summary judgment.  (*See* Doc. No. 31-1.)  However, in violation of Judge Marston's policies, Plaintiffs did not file a statement of undisputed facts in support of their motion *or* respond to the Government's statement of undisputed facts.  (*See generally* Case No. 19-cv-2003 Docket.)  In their motion for summary judgment, Plaintiffs identify five purported "factual" disputes, including whether Three Brothers was properly categorized as a convenience store and whether FNS acted arbitrarily and capriciously in disqualifying the store.  (Doc. No. 32 at 13.)  But all of the identified disputes are *legal, not factual*, so the Court accepts the facts set forth in the Government's statement of undisputed facts (and referenced in Plaintiffs' motion for summary judgment) as true.

trials *de novo*, the court may not "merely . . . determine whether the administrative findings of the agency are supported by substantial evidence." *Freedman v. U.S. Dep't of Agric.*, 926 F.2d 252, 261 (3d Cir. 1991).  Rather, the court must "examine the entire range of issues raised" and "reach its own factual and legal conclusions." *Id.*  The court is not bound by the administrative record and may consider matters outside of the record considered below. *Id.*  "[D]e novo review is compatible with a summary judgment disposition if there are no material facts in dispute." *Id.*

### B.    *Summary Judgment*

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  A dispute is genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material if it "might affect the outcome of the suit under the governing law." *Id.* at 248.  "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249.  "[T]he inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation marks and alterations omitted).

"The same standards and burdens apply on cross-motions for summary judgment." *United States v. Weiss*, 461 F. Supp. 3d 183, 187 (E.D. Pa. 2020) (quoting *Allah v. Ricci*, 532 F.

App'x 48 (3d Cir. 2013)).  "If review of the cross-motions reveals no genuine issue of material

fact, then judgment may be entered in favor of the party deserving of judgment in light of the law

and undisputed facts."  *Id.* (cleaned up).

## III.   ANALYSIS

In reviewing an FNS determination disqualifying a retailer from accepting SNAP

benefits, the court must make two determinations.  First, the court must determine whether the

retailer committed a SNAP violation.  *Famous Int'l Mkt. v. United States*, CIVIL ACTION NO.

17-4897, 2018 WL 3015249, at *9 (E.D. Pa. June 15, 2018).  The retailer bears the burden of

proving, by a preponderance of the evidence, that the alleged violation did not occur.  *Id.*

Second, the court must determine whether FNS's decision to permanently disqualify the retailer

was arbitrary and capricious.  *Id.*; *see also Li Xia Lu v. United States*, CIVIL ACTION No. 18-

cv-1969, 2019 WL 2371759, at *7 (E.D. Pa. June 4, 2019).  The retailer bears the burden of

proving, by a preponderance of the evidence, that FNS acted arbitrarily and capriciously.

*Famous Int'l Mkt.*, 2018 WL 3015249, at *9.

### A.   *Three Brothers Trafficked in SNAP Benefits*

The Court must first determine whether a SNAP violation occurred.  Trafficking in

benefits is a SNAP violation.  7 C.F.R. § 278.6(e)(1)(i).  "Trafficking" is defined as

> The buying, selling, stealing, or otherwise effecting an exchange of
> SNAP benefits issued and accessed via Electronic Benefit Transfer
> (EBT) cards, card numbers and personal identification numbers
> (PINs), or by manual voucher and signature, for cash or
> consideration other than eligible food, either directly, indirectly, in
> complicity or collusion with others, or acting alone.

*Id.* § 271.2.  For instance, if a retailer charges a customer's EBT card $25.00 in exchange for a

$20.00 bill (rather than SNAP-eligible food), the retailer has trafficked SNAP benefits.  *Id.*; *see*

*also Li Xia Lu*, 2019 WL 2371759, at *1 (explaining that SNAP trafficking occurs "when SNAP

7

benefits are exchanged for cash or consideration other than eligible food").

FNS does not have to catch a retailer "red-handed" to prove trafficking.  *Famous Int'l Mkt.*, 2018 WL 3015249, at \*10.  Rather, FNS can prove that a retailer trafficked in SNAP benefits "on the basis of evidence that may include facts established through on-site investigations, inconsistent redemption data, or evidence obtained through a transaction report under an electronic benefit transfer system."  7 C.F.R. § 278.6(a).  FNS can establish trafficking based on irregular EBT transaction data alone, so long as it demonstrates the irregularity of the data by analogizing the suspicious data to data from comparable retailers.  *Shreegi Ents., Inc. v. United States*, CIVIL NO. 1:CV-15-2232, 2018 WL 1919576, at \*2 (M.D. Pa. Apr. 24, 2018); *Famous Int'l Mkt.*, 2018 WL 3015249, at \*10.  A retailer may challenge a data-based trafficking determination by providing evidence to explain the irregularities.  *Famous Int'l Mkt.*, 2018 WL 3015249, at \*10.

Here, FNS reviewed six months' of Three Brothers's EBT transaction data and identified two atypical patterns indicating that the store had engaged in trafficking:  (1) several of the same households made multiple transactions in a short period of time; and (2) there were many excessively large transactions.  (Doc. No. 31 at 11.)  The Court considers whether these purported irregularities support a finding of SNAP trafficking and addresses Plaintiffs' attempts to explain these irregularities below.

### 1.    The Pattern of Repeat Purchases by the Same Household Supports a Finding of SNAP Trafficking

The EBT data shows that 26 unique households made multiple transactions at Three Brothers in a short period of time.  (Doc. No. 31-1 ¶ 14.)  During the review period, these 26 households made 31 "sets" of transactions (i.e., two, three, or four transactions within a 24-hour period).  (*Id.*)  Each of the transaction sets totaled over $100.00, which is unusually large.  (*Id.*)

For comparison, during the same period, the average transaction at a convenience store in Philadelphia County was $8.37.  (*Id.* ¶ 16.)  Assuming that each of the transaction sets consisted of four separate transactions, each individual transaction would have averaged over $25.00—that is substantially higher than the $8.37 average at convenience stores in Philadelphia County and the $8.79 average at small grocery stores in Philadelphia County.  (Doc. No. 29-1 at 85.)

FNS concluded that the frequency of the transactions and the atypically large amount of each transaction set suggested that Three Brothers was engaged in SNAP trafficking for several reasons.  (Doc. No. 32-1 at 30.)  This pattern is suggestive of trafficking because SNAP traffickers will often have the same household conduct multiple transactions "to avoid single high-dollar transactions that cannot be supported by a retailer's inventory."  (*Id.*)  Additionally, the multiple transactions were "inconsistent with the nature and extent of [Three Brothers's] stock."  (*Id.*)  Put differently, Three Brothers did not sell the kinds of food that would support $100.00 or more in transactions by a single household in a single day.  (*Id.*)

Plaintiffs raise six arguments in an effort to explain why these irregular transactions are not indicative of SNAP trafficking.

First, they argue that "[j]ust because a store's sales are different does not mean that it is trafficking" and FNS "never tries to determine whether [the irregularities] could be due to random chance."  (Doc. No. 32 at 14.)  The regulations belie this argument—FNS can support a finding of SNAP trafficking through evidence of irregular transaction data *alone*.  *See* 7 C.F.R. § 278.6 (a) ("Such disqualification shall result from a finding of a violation on the basis of . . . evidence obtained through a transaction report under an electronic benefit transfer system."); *see also Shreegi Ents.*, 2018 WL 1919576, at *2 ("Reliance on EBT transaction data alone is sufficient.").

Second, Plaintiffs take issue with the fact that FNS reviewed only six months' of EBT transaction data. (Doc. No. 32 at 14.) But six months is the standard review period for FNS investigations of potential SNAP violations. *See, e.g.*, *Market*, 2022 WL 294754, at *2 (affirming FNS determination based on review of data from August 1, 2018 through January 31, 2019); *Martinez Grocery II v. United States*, Civil Action No. 18-0627 (NLH/KMW), 2019 WL 4727924, at *2 (D.N.J. Sept. 27, 2019) (affirming FNS determination based on review of data from December 2016 through May 2017); *Li Xia Lu*, 2019 WL 2371759, at *7 (affirming FNS determination based on "analysis of the EBT transactions between February and July of 2017").

Third, Plaintiffs contend that one of the flagged transaction sets contradicts FNS's theory that SNAP traffickers have households engage in multiple, small transactions to avoid single, large transactions. (Doc. No. 32 at 16.) Plaintiffs explain that one household made two separate, large transactions in a single day—one for $57.88 and another for $74.24. (*Id.*) Plaintiffs contend that if Three Brothers was trying to conceal SNAP trafficking by having households make multiple transactions, they would have divided this transaction set into even smaller individual transactions. (*Id.*) The fact that both transactions in this set were so large, Plaintiffs argue, shows that Three Brothers must not have been engaged in trafficking. (*Id.*) The Court recognizes that this particular transaction set may not align with FNS's theory, but FNS has identified 30 other transaction sets that do support its theory, which is sufficiently suggestive of trafficking. *See Famous Int'l Mkt.*, 2018 WL 3015249, at *12 ("[T]he Market's citation to a single transaction hardly comes close to offering an adequate explanation to create a genuine issue of material fact that the irregular EBT data pattern of 1,800 transactions over a six-month period is not the result of trafficking.").

Fourth, Plaintiffs argue that the pattern of multiple transactions by the same household in

10

a short period makes sense because "many family members within the same household go[] to the store throughout the day." (Doc. No. 32 at 15–16.) Other than self-serving affidavits from Tejada and a former cashier, Plaintiffs have not presented any evidence supporting this argument. And "conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment." *Kirleis v. Dickie, McCamey, & Chilcote, P.C.*, 560 F.3d 156, 161 (3d Cir. 2009) (quoting *Blair v. Scott Specialty Gases*, 283 F. 3d 595, 608 (3d Cir. 2002)); *see also My Town Supermarket # 1 v. United States*, CIVIL ACTION NO. 3:17-0921, 2019 WL 3067254, at *3 (M.D. Pa. July 12, 2019) ("Plaintiffs' explanations, without evidence for support, are merely 'general statements about customers' shopping patterns or other customer practices [and] are not enough to create a triable issue of fact.'" (quoting *Shreegi Ents.*, 2018 WL 1919576, at *20)).

Fifth, Plaintiffs contend that FNS improperly categorized Three Brothers as a convenience store rather than as a grocery store, meaning that FNS erred in comparing Three Brothers's transaction data to data from other convenience stores in Philadelphia County. (Doc. No. 32 at 16–17.) FNS defines "Convenience Store" as

> Self-service stores that offer a limited line of convenience items and are typically open long hours to provide easy access for customers. Primarily engaged in retail sale of a variety of canned goods, dairy products, pre-packaged meats and other grocery items in limited amounts. Usually sell a large variety of ineligible products; such as hot coffee, alcohol, or tobacco products.

(Doc. No. 32-1 at 77.) FNS defines "Small Grocery Store" as "[a] store that carries a small selection of all four staple food categories." (*Id.* at 78.) The four staple food categories are (1) meat, poultry, or fish; (2) bread or cereals; (3) vegetables or fruits; and (4) dairy. (*Id.*)

The Court agrees that Three Brothers should have been classified as a "Small Grocery Store" rather than as a "Convenience Store because it carries all four categories of staple foods. (*See* Doc. No. 32-1 at 29 (detailing Three Brothers's offerings, including (1) "a minimal variety

11

of frozen meats, poultry, and seafood," "deli meats," and "canned/potted meat, canned fish, eggs, sausage, and bacon," (2) "pasta, rice, bread, cereal, flour, baking mix, [and] grits," (3) "a limited variety and amount of fresh produce," and (4) dairy, including "milk, margarine, yogurt, butter, and cheese").)  However, even comparing Three Brothers's transaction data to data from other Small Grocery stores, there are still irregularities indicative of trafficking.  (*See* Doc. No. 29-1 at 91 (indicating that Three Brothers "has a much higher Transaction Count than 3 nearby SG [Small Grocery] stores").)

Finally, Plaintiffs argue that they have provided sufficient inventory reports to show that the store was actually selling enough items to account for each of the SNAP transactions.  (Doc. No. 32 at 17.)  Three Brothers's inventory reports do show that the store "had sufficient inventory to account for the SNAP redemptions," but they do not show that the store had enough inventory to account for SNAP transactions *and* cash, credit, and debit card sales.  (Doc. No. 32-1 at 69.)  Plaintiffs do not suggest (and the record does not indicate) that Three Brothers did not accept these other forms of payment, so Plaintiffs' failure to account for these other transactions renders this argument meaningless.  *See Martinez Grocery II*, 2019 WL 4727924, at *3 (concluding that invoice data did not support SNAP redemptions coupled with cash, credit, and debit card sales).

The Court finds that the fact that 26 households made 31 sets of transactions in short time periods supports a finding of SNAP trafficking.  These numbers are on par with other irregular patterns other courts in this Circuit have found indicative of SNAP trafficking, and Plaintiffs have not offered any evidence demonstrating that these transactions could be legitimate.  *See, e.g.*, *Market v. United States*, 1:20-cv-3285-NLH-SAK, 2022 WL 294754, at *2 (D.N.J. Feb. 1, 2022) (finding that a pattern of 21 repetitive transactions from the same households was

indicative of SNAP trafficking); *Cedar Food Mkt. 7, Inc. v. United States*, Civil No. 18-3470 (RMB/KMW), 2019 WL 6907489, at *2 (D.N.J. Dec. 19, 2019) (concluding that a pattern of 17 sets of transactions by the same households supported a finding of trafficking); *Famous Int'l Mkt.*, 2018 WL 3015249, at *10–13 (finding that a pattern of 38 households making 47 sets of transactions supported a finding of SNAP trafficking).

### 2. The Pattern of Excessively Large Transactions Supports a Finding of SNAP Trafficking

The EBT transaction data also reveal a pattern of "excessively large transactions," which is indicative of trafficking. (Doc. No. 31-1 ¶ 15.) FNS uncovered 640 excessively large transactions during the review period.[3] (*Id.*) This number is substantially higher than the number of excessively large transactions at three comparable stores, which had 0, 38, and 39 "excessively large transactions" in the same period. (*Id.* ¶ 16.) FNS also analyzed shopping data from seven households that made excessively large transactions. (Doc. No. 29-1 at 97–100.) FNS found that these households "ha[d] access to larger stores and d[id] not depend on [Three Brothers] for food items." (*Id.* at 97.) For instance, some of these households were making excessively large transactions at Three Brothers and then, one or two days later, "making similar or smaller transactions at much larger stores." (*Id.*) Because these households had access to larger grocery stores with more selections, FNS concluded that their continued utilization of Three Brothers suggested trafficking. (*Id.*)

FNS determined that this pattern of excessively large transactions (which was supported by the household-specific analysis) suggests that Three Brothers was engaged in SNAP trafficking. (Doc. No. 32-1 at 32.) Three Brothers primarily sells "accessory food items such as

---

[3] FNS considers transactions over $32.37 "excessively large." (Doc. No. 32 at 16.)

snack foods, candy, and drinks and inexpensive staple foods," so the store's inventory does not support transactions of this size.  (*Id.*)

Plaintiffs raise eight arguments to rebut the presumption that these excessively large transactions support a finding of SNAP trafficking.

First, Plaintiffs argue that Three Brothers should be classified as (and compared to) small grocery stores, not convenience stores.  (Doc. No. 32 at 16.)  As discussed above, *see supra* Section III.A.1, the Court agrees that Three Brothers should be classified as a small grocery store.  Nevertheless, even in comparison to small grocery stores, these transactions are still excessively large and irregularly frequent.  (*See* Doc. No. 29-1 at 85 (explaining that "these 640 [excessively large transactions] had an amount at least 268% higher than the average transaction amount ($8.79) for Small Grocery Stores in Philadelphia [C]ounty, PA").)  *See Famous Int'l Mkt.*, 2018 WL 3015249, at *14 (finding that it was irregular for a grocery store in Philadelphia County to have 400 large transactions in a six-month period).

Second, Plaintiffs argue that FNS's finding that the 640 excessively large transactions were for an average of $49.06 is misleading because the average does not factor in small-dollar sales.  It is standard, however, for FNS to use the average of the excessively large transactions as the point of comparison.  *See Shreegi Ents.*, 2018 WL 1919576, at *23 ("The average transaction at a convenience store in Pennsylvania during the review period was about $9.00, while 195 out of 2,625 transactions at the Shenandoah Stop Shop during the review period were for more than $35, which is 300% above the state average.").  Further, the *fact*, not the *size*, of the numerous excessively large transactions suggests that Three Brothers was trafficking SNAP benefits.  *See Market*, 2022 WL 294754, at *2, *6–7 (considering the frequency of excessively large transactions, not the average size); *Famous Int'l Mkt.*, 2018 WL 3015249, at *14 (same).

14

Third, Plaintiffs take issue with FNS's assumption that Three Brothers "has nothing to attract SNAP customers as there are no special or custom services offered." (Doc. No. 32 at 18–19.) Plaintiffs contend, "Just because Three Brothers is not a large supermarket, this does not mean that it is not the *primary* food source for households in the area." (*Id.* at 19.) Plaintiffs offer no evidence in support of this argument, other than an affidavit from a former Three Brothers cashier stating that "she is a regular customer and . . . would only shop at Three Brothers for her everyday needs" and that "she is aware of a lot of customers . . . who live in the surrounding area and do the same." (*Id.*) As discussed above, self-serving affidavits about customers' purported shopping habits do not demonstrate that Three Brothers was the primary food source for certain of its customers (which may explain the numerous excessively large transactions). *See Shreegi Ents.*, 2018 WL 1919576, at *20 ("[G]eneral statements about customers' shopping patterns or other customer practices are not enough to create a trible issue of fact." (quoting *J & L Liquor, Inc. v. United States*, No. 16-cv-10717, 2017 WL 4310109, at *6 (E.D. Mich. Sept. 28, 2017))).

Fourth, Plaintiffs argue that FNS's household-specific analysis was insufficient because FNS did not interview any members of those households. (Doc. No. 32 at 19–20.) Courts regularly affirm FNS determinations based on analyses of household-specific data even where FNS did not interview any of members of the households analyzed. *See Market*, 2022 WL 294754, at *2 (affirming an FNS determination based, in part, on an analysis of four households' shopping patterns that revealed the households were shopping at "larger and better stocked stores"); *Famous Int'l Mkt.*, 2018 WL 3015249, at *12 (affirming an FNS determination based, in part, on a review of six households' EBT data revealing multiple purchases at the same store in a short time span). Moreover, at this stage, Plaintiffs bear the burden of proving that the

15

SNAP trafficking did not occur, so *they* should have interviewed individuals from the households analyzed in an attempt to rebut FNS's findings.

Fifth, Plaintiffs argue that Three Brothers "caters to the Spanish speaking community," which may explain why its customers made excessively large transactions with atypical regularity. (Doc. No. 32 at 20.) Again, however, other than Tejada's own affidavit that she "always ask[s] what the customers are looking for and get[s] it for them to buy" (Doc. No. 32-1 at 43), Plaintiffs have not presented any evidence supporting their argument that the "Spanish speaking community" is more likely to make large purchases from Three Brothers. In fact, the FNS investigator concluded that Three Brothers does not offer any "specialty or international foods that are not available at other area authorized stores." (Doc. No. 32-1 at 31.) Given the lack of evidence that Three Brothers offered any unique goods or services for the Spanish speaking community, this argument does not explain the excessively large transactions. *See Famous Int'l Mkt.*, 2018 WL 3015249, at *14 (rejecting the plaintiff's argument that its store was unique because it offered Halal and Asian food where the plaintiff failed to present any evidence that other stores in the area did not have similar offerings or that its customers came to the store because of those offerings).

Sixth, Plaintiffs attempt to legitimize the excessively large transactions by explaining that Three Brothers sells infant formula, which is very expensive. (Doc. No. 32 at 20.) The majority of households who qualify for SNAP benefits also qualify for WIC benefits, which can be used to purchase necessities for children, such as baby food and formula. (Doc. No. 32-1 at 31.) Far more foods are SNAP eligible than are WIC eligible, which means that households enrolled in both programs would typically use WIC benefits to purchase formula and SNAP benefits to purchase other food. (*Id.*) Three Brothers is not authorized to accept WIC benefits, and they

16

have not presented any evidence that any of these excessively large transactions were for
formula, so this does not explain the excessively large transactions.  *See Li Xia Lu*, 2019 WL
2371759, at \*4 (affirming FNS determination rejecting a store's argument that there were a
number of unusually large transactions because "WIC-eligible households would be unlikely to
spend SNAP benefits on items that could be bought with WIC benefits instead").

Seventh, Plaintiffs contend that customers are more likely to shop at Three Brothers
"because of the price, distance, and convenience it provides to them."  (Doc. No. 32 at 20–21.)
Specifically, Plaintiffs argue that the store had sales and promotions, that seniors live near Three
Brothers and "utilize its handicap aisle to shop," and that the store is open earlier than other
stores in the neighborhood.  However, other than Tejada's self-serving affidavit, Plaintiffs again
fail to present any evidence that other stores in the neighborhood are more expensive, less
accessible for elderly customers, or open later.  And Plaintiffs' conclusory allegations about the
stores' customers' shopping preferences do not create a factual dispute as to the legitimacy of
these transactions.  *See My Town Supermarket #1*, 2019 WL 3067254, at \*3 ("Stores may not
rely on generalized or conclusory argument to create genuine issues of material fact." (quoting
*Famous Int'l Mkt.*, 2018 WL 3015249, at \*10)).

Finally, Plaintiffs argue that FNS "fails to show any reliable evidence concerning why
amounts spent at Three Brothers [are] excessive . . . in relationship to Three Brothers's
customers['] spending behavior."  (Doc. No. 32 at 21–22.)  However, as discussed above, FNS
*has* presented such evidence.  The number of excessively large transactions made at Three
Brothers during the review period was substantially higher than the number of excessively large
transactions made at other, comparable retailers during the same period, and FNS was not able to
ascertain any legitimate explanation why there were so many large transactions.  (Doc. No. 32-1

at 32.)  FNS has satisfied its burden and established a SNAP violation, so, at this stage, the

burden falls on Plaintiffs, and, as discussed in connection with every single argument raised to

contest the determination, Plaintiffs have not presented any evidence that the challenged

transactions were legitimate.  *See Shreegi Ents.*, 2018 WL 1919576, at 20.

The Court finds that 640 excessively large transactions in a six-month period is irregular

and supports a finding of SNAP trafficking.  Other courts in this Circuit have found that patterns

of far fewer excessively large transactions supported a finding of SNAP trafficking.  *See Market*,

2022 WL 294754, at *2, *6–7 (finding that a pattern of 190 excessively large transactions over a

six-month period was suspicious); *Shreegi Ents.*, 2018 WL 1919576, at *23–26 (finding that a

pattern of 195 excessively large transactions was suspicious); *Famous Int'l Mkt.*, 2018 WL

3015249, at *14 (finding that a pattern of 400 excessively large transactions was suspicious).

And importantly, Plaintiffs have not presented any evidence that these large transactions were

legitimate.

\*       \*       \*

FNS has identified two patterns that are both suggestive of SNAP trafficking, and

Plaintiffs have not proved by a preponderance of the evidence that Three Brothers was not

engaged in SNAP trafficking.  Accordingly, the Court finds that the store has committed a SNAP

violation.

### B.    *Three Brothers' Disqualification Is Warranted*

Having found that Three Brothers engaged in SNAP trafficking, the Court must now

determine whether FNS's decision to permanently disqualify the store was warranted.  A retailer

can be permanently disqualified from SNAP on the first occasion of trafficking, 7 U.S.C.

§ 2021(b)(3)(B); however, a retailer may challenge its disqualification as arbitrary and

capricious, *see Famous Int'l Mkt.*, 2018 WL 3015249, at *9.  A determination is arbitrary and capricious if it is "unwarranted in law or fact."  *Id.*  Plaintiffs argue that FNS's determination is arbitrary and capricious "because its own procedures, policies, data systems, and investigations are limited [and] flawed."  (Doc. No. 32 at 22.)

Specifically, Plaintiffs claim that the disqualification is based on "only a snapshot of the Plaintiffs' business" given the six-month review period.  However, Plaintiffs do not cite any case law in support of this argument, and as discussed above, six months is the standard review period in such investigations.  *See supra* Section III.A.1 (collecting cases).

Plaintiffs also contend that the ALERT system is flawed because "[a]lthough the ALERT system identified October 2017 through March 2018 as the period with unusual, irregular or inexplicable activity, [the system] did not notify [FNS] until March 2018, six months after the period started."  (Doc. No. 32 at 24.)  Plaintiffs have not argued that the data presented by FNS's ALERT system was flawed; instead, they argue that the system failed to timely alert FNS to the unusual transaction data.  Even assuming that FNS was not notified of irregular activity at Three Brothers until March 2018, that alert was not delayed—it came at the end of the six-month review period.  Plaintiffs cannot, in good faith, argue that the six-month review period was both too short and too long.  Moreover, the ALERT system is not the end-all be-all; it is simply an *alert* system, and FNS conducts a thorough investigation to corroborate an alert prior to bringing any charges.  Further, to the extent Plaintiffs are arguing that a jury should determine the efficacy of the ALERT system, this argument is unavailing.  Courts have entered summary judgement in favor of the United States based on data from the ALERT system in numerous SNAP trafficking cases within this Circuit.  *See Market*, 2022 WL 294754, at *2; *Cedar Food Mkt. 7, Inc.*, 2019 WL 6907489, at *1; *Martinez Grocery II*, 2019 WL 4727924, at *5; *My Town Supermarket #1*,

2019 WL 3067254, at *2; *Li Xia Lu*, 2019 WL 2371759, at *1; *Famous Int'l Mkt.*, 2018 WL
3015249, at *2; *Shreegi Ents.*, 2018 WL 1919576, at *3.

Finally, Plaintiffs claim that a "lesser sanction, such as a six-month disqualification or a
civil monetary penalty" would have been more appropriate.  (Doc. No. 32 at 24–25.)  Neither of
those lesser penalties was appropriate in this case.  First, the regulations make clear that a retailer
can be *permanently* disqualified from SNAP based on just one instance of SNAP trafficking.
7 U.S.C. § 2021(b)(3)(B).  The case law reveals that permanent disqualification is the standard
punishment for such offenses.  *See, e.g.*, *Market*, 2022 WL 294754, at *8; *Li Xia Lu*, 2019 WL
2371759, at *7; *Famous Int'l Mkt.*, 2018 WL 3015249, at *15.  Further, even if a civil monetary
penalty were appropriate, a retailer must request a civil monetary penalty within ten days of
receiving the charge letter.  7 C.F.R. §§ 278.6(b)(2)(iii)–(iii).  Three Brothers did not request a
civil monetary penalty within the set amount of time, so the store is not eligible for such a
penalty.

SNAP trafficking is a serious violation.  FNS conducted a thorough investigation based
on reliable data from Three Brothers and comparable stores and discovered that Three Brothers
was likely engaged in trafficking.  Given the seriousness of the offense and Plaintiffs' inability to
offer any arguments supported with evidence to explain the atypical transaction patterns at the
store, the Court finds that permanent disqualification is warranted.

## IV.   CONCLUSION

For the reasons above, the Government's motion for summary judgment is granted, and
Plaintiffs' motion for summary judgment is denied.  An appropriate Order follows.